## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CHRISTINE T. CLEMINS, Individually and on Behalf of All Others Similarly Situated, | Case No. 11-CV-36-WEC |
| Plaintiff, | **PLAINTIFF'S SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS** |
| v. | |
| ALLIANCE DATA SYSTEMS CORPORATION, WORLD FINANCIAL NETWORK NATIONAL BANK, and DOES 1 through 100, inclusive, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Pursuant to the Court's August 31, 2011, Order (Dkt. No. 24), Plaintiff Christine T. Clemins ("Plaintiff"), on behalf of herself and all others similarly situated (the "Class"), submits this sur-reply memorandum in opposition to Defendants Alliance Data Systems ("Alliance") and World Financial Network National Bank's ("WFNNB") (collectively, "Defendants") Motion to Compel Arbitration and Stay All Proceedings ("Defs.' Mot.") (Dkt. No. 12).

## I.     INTRODUCTION.

Plaintiff respectfully requests that the Court deny Defs.' Mot. There is no valid, binding arbitration agreement between the parties, and even if there were an agreement to arbitrate, Defendants' arbitration provisions are unconscionable and unenforceable under applicable Wisconsin law.  This remains the case even after the Supreme Court's decision in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740 (2011).

1

In the time between the Plaintiff's filing of her Response Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration and Stay All Proceedings ("Pl.'s Response") (Dkt. No. 16) and Defendants' filing of their Reply Brief in Support of Motion to Compel Arbitration and Stay all Proceedings ("Defs.' Reply") (Dkt. No. 19), the Supreme Court handed down its decision in *Concepcion*. Defs.' Reply incorrectly cites *Concepcion* as completely barring unconscionability defenses under state contract law when analyzing agreements to arbitrate. However, for the reasons stated below, *Concepcion* does not mandate such a finding under the laws and facts of this case, and this is far too broad a reading of *Concepcion*. *See In re DirecTV Early Cancellation Fee Mktg. and Sales Practice Litig. ("DirecTV")*, Case No. 09-ML-2093-AG, 2011 U.S. Dist. LEXIS 102027 at *24 (C.D. Cal. Sept. 6, 2011) (*Concepcion* makes clear that "the savings clause of the FAA still 'permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'") (quotations omitted); *In re Checking Account Overdraft Litig.*, Case No. 09-MD-02036-JLK, slip op. at 8-9 (S.D. Fla. Sept. 1, 2011)[1] (*Concepcion* does "not completely do away with unconscionability as a defense to the enforcement of arbitration agreements under the FAA. Rather, *Concepcion* expressly recognized that unconscionability is a defense contemplated by the Savings Clause of the FAA."); *Rivera v. Am. Gen. Fin. Servs.*, Case No. 32,340, 2011 NMSC 33, *2011* N.M. LEXIS 379 at *12 (N.M. filed July 27, 2011, released for publication Aug. 23, 2011). *See also, NAACP of Camden County East v. Foulke Mgmt. Corp.*,

---

[1]        A copy of this September 1, 2011, Order in *Overdraft* is attached as Exhibit 1 to the Declaration of Corey Mather ("Mather Decl."), filed concurrently herewith

2

Dkt. No. A-1230-09T3, 2011 N.J. Super. LEXIS 151 (N.J. Super. Ct. App. Div. Aug. 2, 2011);

*Murray v. DirecTV*, Case No. CV 2010-093-3, slip op. (Ark. Cir. Ct. June 30, 2011).[2]

The facts of this case on the arbitration agreement itself are in stark contrast to the relatively consumer friendly terms upheld in *Concepcion*.[3] Moreover, contrary to Defendants' sweeping assertions, the applicable Wisconsin law, very much unlike the overtly arbitration-hostile *Discover Bank* rule addressed in *Concepcion*, is truly a state contract law of general applicability:

> [9 U.S.C. § 2 still] permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." This saving clause permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.

*Concepcion*, 131 S. Ct. at 1746 (*quoting* 9 U.S.C. § 2). Nothing in the California district court slip opinion cursorily cited by Defendants, (*Zarandi v. Alliance Data Sys. Corp.*, No. 10-8309, slip op. at 3 (C.D. Cal. May 9, 2011)), which concerned an entirely different credit card agreement and arbitration provision, and, like *Concepcion*, concerned California law, warrants a different finding.[4] Accordingly, the denial of Defs.' Mot. is required under Wisconsin law, notwithstanding *Concepcion*.

---

[2]    A copy of the *Murray* Order is attached as Mather Decl., Exhibit 2

[3]    Accordingly, contrary to GEMB's assertions, courts post-*Concepcion* not only can, but are, still properly striking arbitration provisions, if they are subject to "generally applicable contract defenses." *See, e.g., DirecTV*, 2011 U.S. Dist. LEXIS 102027; Mather Decl., Exhibit 1 (*Overdraft* September 1, 2011, Order); *Rivera*, 2011 N.M. LEXIS 379; *NAACP of Camden County East*, 2011 N.J. Super. LEXIS 151; Mather Decl., Exhibit 2 (*Murray*).

[4]    The *Zarandi* court's citation to *Concepcion*, though the basis for granting these same Defendants' motion to compel arbitration in that matter, is even more fleeting than Defendants' citation to *Zarandi* in Defs.' Reply, and is void of any analysis, let alone any applicability to Wisconsin law and general contract defenses to arbitration agreements.

Tellingly, Defendants' cursory cite to their own arbitration "victory" in *Zarandi* made no reference to, let alone produced for this Court, the arbitration agreement at issue in that case. This is, no doubt, due to the fact that the *Zarandi* arbitration provision had very similar consumer-friendly terms and clauses to those at issue in the *Concepcion* arbitration provision and in stark contrast to those at issue here (*see infra.*). Defendants' *Zarandi*

3

Finally, Plaintiff maintains that based on the submissions already before the Court (and granting, *arguendo*, many of Defendants' evidentiary claims) it is clear that there is an insufficient basis for granting Defs.' Mot. However, if the Court is at all inclined to disagree, then Plaintiff respectfully requests that the Court defer ruling on the motion pending completion of limited arbitration-related discovery, which would be critical to further establishing the requisite evidentiary record necessary to support denial of the effort to compel arbitration. Thus, if the Court is not prepared to deny Defs.' Mot. at this juncture (as Plaintiff maintains it can and should), then the Plaintiff renews her motion to obtain limited, arbitration-related discovery. (*See* Dkt. Nos. 20-21.)

## II. DEFENDANTS' ARBITRATION PROVISION IS UNENFORCEABLE, AS IT IS UNCONSCIONABLE AND DISTINGUISHABLE FROM THE PROVISION IN *CONCEPCION*.

The arbitration clause applicable to AT&T customers (that was at issue in *Concepcion*) is markedly different than the arbitration clause in Defendants' Credit Card Agreement (Dent Decl. Ex. 1). More particularly, the key components of AT&T's arbitration process are:

- Disputes initiated and demand for arbitration invoked online;
- Arbitration may take place over the phone, in person, or by submissions only;
- AT&T agrees to pay all claimants' costs for non-frivolous claims;
- AT&T has no right to recover its attorney's fees; and
- If arbitrators award an amount greater than AT&T's last written settlement offer, AT&T is required to pay $10,000.00 minimum recovery plus twice the claimant's attorneys' fees.

*Concepcion*, 131 S. Ct. at 1744, 1753. The lower courts in *Concepcion* actually found that the process was "quick, easy to use", and that consumers might actually be "better off" going

---

briefing went to great lengths to point out these elements in that case, as well as the fact that, unlike here, the plaintiff in *Zarandi* even had the opportunity on more than one occasion to reject the arbitration provision. Should this Court request it, Plaintiff can provide the Court with the relevant documents and filings of Defendants' from the *Zarandi* case.

through the pre-arbitration and arbitration process than bringing their claims in state or federal courts. *Id.* at 1745, 1753.

Defendants' arbitration process, on the other hand, is set up specifically to prevent consumers from making claims. It establishes a way that Defendants can control the dispute process, reduce their own litigation costs and limit exposure, while increasing the risk a claimant runs of bringing a dispute in the first place. The chart below illustrates just how different the two arbitration processes are, and how much more advantageous to consumers the AT&T process is:

| | AT&T Mobility Arbitration Clause | WFNNB Credit Card Arbitration Clause |
| --- | --- | --- |
| **Communication process before arbitration sought?** | Yes. Online Notice of Dispute form; if not resolved in 30 days, arbitration may be invoked. | None. |
| **Demand for Arbitration form available online?** | Yes. | No. Arbitration clause does not even state how or where to contact Defendants regarding a demand for arbitration, and directs consumers to contact NAF or JAMS to figure out how to file a claim. (Dent Decl. Ex. 1, ¶ 26.) |
| **Arbitration can be held over the phone or by submissions only?** | Yes. | No. |
| **In person arbitration location?** | In the county where customer is billed. | Within the federal judicial district of the customer's residence. (*Id.*) |
| **All costs of claimants paid?** | Yes, on all non-frivolous claims brought to arbitration. | No. Consumers must pay the costs if they make a claim for arbitration. (*Id.*)<br><br>If WFNNB elects to arbitrate, then it will merely "advance" the consumer's costs, and it will only do so upon written request to WFNNB's General Counsel. (*Id.*)<br><br>However, "[t]he arbitrator will decide who will ultimately be |

5

| | | |
|---|---|---|
| | | responsible for paying those fees", and consumers may actually "be required to reimburse" WFNNB "for any arbitration filing, administrative or hearing fees" up to the amount of what **both parties'** "combined court costs would have been." (*Id.*)<br><br>Finally, a consumer shall bear the costs of appealing an arbitrator's decision "regardless of the outcome." (*Id.*) |
| **Prohibition of Company seeking to recover attorneys' fees?** | Yes. | No. In fact, the consumer is required to pay the Company "reasonable attorneys' fees, expenses, and court costs…[that it] incur[s] in order to collect…[on the] Account or protect…[the Company's] rights." (Dent Decl. Ex. 1, ¶ 16.) |
| **Is there a monetary incentive for company to resolve disputes?** | Yes. If the arbitration award is greater than the last written settlement offer, AT&T must pay $10,000 minimum recovery plus twice claimant's attorneys' fees. | No. |
| **Is arbitration requirement mutually binding on both parties?** | Yes. | No. WFNNB, but not consumers, may obtain "attorneys' fees, expenses and court costs" incurred in protecting its rights. Consumers are not similarly entitled to such things. (*Id.*)<br><br>The reimbursement for arbitration fees is similarly one-sided in WFNNB's favor. (Dent Decl. Ex. 1, ¶ 26.)<br><br>Finally the arbitration provision explicitly holds that the rights under it "inure[s] to the benefit of |

| | | any third party named as a co-defendant with" WFNNB or Alliance, but the same is not true for third parties on the side of consumers. Further, while the benefits inure to these co-defendants of WFNNB or Alliance, the "obligations under this arbitration provision" do not inure to such parties. (*Id.*) |
|---|---|---|

There is no doubt that the *Concepcion* decision was significant, but the opinion itself draws largely upon the relatively fair and reasonable terms of the AT&T Mobility arbitration clause, as well as the overtly arbitration-hostile California law in question. Accordingly, the Supreme Court's decision is limited to its holdings, that: (1) the *Discover Bank* rule in California (identifying all arbitration clauses with class action waiver provisions as *per se* unconscionable) is preempted by the FAA, and (2) the AT&T arbitration clause with class action waiver is not unconscionable. *Concepcion*, 131 S. Ct. at 1742. The Supreme Court's decision does not serve as a blanket protection of all arbitration clauses with class action waivers, of course, to say nothing about an arbitration process set up like Defendants' process. Because Defendants' arbitration clause and process is so much more favorable to the drafting company than the clause in *Concepcion*, the *Concepcion* opinion does not speak directly to the facts presented herein. At best for Defendants, arbitration-based and fact discovery would be needed at this time before a decision could be made holding that *Concepcion* applied here. Based on the facts as presented here, and Wisconsin's existing law in contrast to the *Discover Bank* rule, however, this is not necessary, as the arbitration provisions are clearly unconscionable and unenforceable.

## A. The FAA "Saving Clause" Remains Applicable In Wisconsin After *Concepcion*.

The FAA reserves to the States the power to invalidate arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court recognized in *Concepcion*, "[t]his saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration, or that derive their meaning from the fact than an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746 (internal quotations and citations omitted).

The majority in *Concepcion* answered the limited question of whether the FAA preempted California's "*Discover Bank* rule." *Id.* Underpinning the Supreme Court's conclusion was a concern that the *Discover Bank* rule may have a "disproportionate impact on arbitration agreements." *Id.* at 1747. But it did not take the further – and far broader – step of saying that arbitration provisions containing class action waivers could *never* be deemed unconscionable. *Id.* Significantly, nothing in *Concepcion* purports to limit the scope, meaning, or application of the FAA savings clause. Indeed, the Court reiterates that the "saving clause preserves generally applicable contract defenses . . . ." *Id.* at 1748. *See also, DirecTV*, 2011 U.S. Dist. LEXIS 102027; Mather Decl., Exhibit 1 (*Overdraft* September 1, 2011, Order); *Rivera*, *2011* N.M. LEXIS 379; *NAACP of Camden County East*, 2011 N.J. Super. LEXIS 151; Mather Decl., Exhibit 2 (*Murray*). Further, the FAA requires that federal courts apply state law, "whether of legislative or judicial origin [ ] if that law arose to govern issues concerning the validity, revocability and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, at 493 n.9 (1987); *see also Wisconsin Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155, 176-77 n.65-66

8

(Wis. 2006). The applicable state law in this matter is Wisconsin.[5] Accordingly, this Court may determine, without running afoul of *Concepcion*, that an arbitration clause is unenforceable under Wisconsin's principles that apply equally to all contracts and do not have a disproportionate impact on arbitration agreements.

The Wisconsin Supreme Court and Court of Appeals have held clearly and repeatedly that all contracts and contract provisions that are unconscionable are void and unenforceable. *See Deminsky v. Arlington Plastics Mach.*, 657 N.W.2d 411 (Wis. 2003); *Disc. Fabric House of Racine, Inc. v. Wisconsin Tel. Co.*, 345 N.W.2d 417 (Wis. 1984); *Leasefirst v. Hartford Rexall Drugs, Inc.*, 483 N.W.2d 585 (Wis. Ct. App. 1992). It necessarily follows, and is expressly allowed under the FAA's savings clause, that some arbitration provisions can be unconscionable. *Wisconsin Auto Title*, 714 N.W.2d at 175; *United Artists Corp. v. Odeon Bldg.*, 248 N.W. 784, 785 (Wis. 1933); *Cottonwood Fin., LTD. v. Estes* ("*Estes*"), 784 N.W.2d 726 (Wis. Ct. App. 2010); and *Coady v. Cross Country Bank, Inc.*, 729 N.W.2d 732 (Wis. Ct. App. 2007); *Appleton Papers, Inc. v. Home Indem. Co.*, 612 N.W.2d 760 (Wis. Ct. App. 2000). Accordingly, in Wisconsin, as in every state, "application of state contract law to invalidate…[arbitration provisions] "is consistent with § 2 of the Federal Arbitration Act…, [and g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Wisconsin Auto Title*, 714 N.W.2d at 176; *see also Concepcion*, 131 S. Ct. at 1748. Wisconsin "contract law on unconscionability does not single out arbitration provisions" and the FAA "does not preempt…[Wisconsin's] unconscionability analysis." *Wisconsin Auto Title*, 714 N.W.2d at 176-77; *see also Coady*, 729

---

[5]     *See* Pl.'s Response at 8-17.

9

N.W.2d at 748 (arbitration clauses can be held unconscionable, and hence unenforceable, based on the common law of contracts, and not on any specific prohibition on class action waivers).

**B.** **Defendants' Arbitration Provision Is Not Enforceable Because It Is Unconscionable.**

Under Wisconsin law, a contract or provision is invalid and unenforceable if it is unconscionable. *Wisconsin Auto Title*, 714 N.W.2d at 164. The doctrine of unconscionability has both a procedural and a substantive element. *Id.* However, a "court will weigh all the elements of unconscionability and may conclude unconscionability exists because of the combined quantum of procedural and substantive unconscionability." *Id.* (*citing Disc. Fabric*, 345 N.W.2d at 425). "The more substantive unconscionability present, the less procedural unconscionability is required, and vice versa." *Id.*

The most recent Wisconsin Supreme Court case on the matter, *Wisconsin Auto Title*, involved an arbitration agreement that was silent on the issue of class actions, and the Court explicitly did "not address…[the] issue" of whether it was even "possible to pursue class claims in arbitration", while nevertheless voiding the arbitration clause as unconscionable. 714 N.W.2d, at 175. *See also, id.* at 177 (Court's finding of unconscionability did "not rest…on the effect of the arbitration provision on…class actions.") The basis for a finding of substantive unconscionability in the arbitration agreement in *Wisconsin Auto Title* was made apart from the issue of a class action waiver, and was based primarily on the element of one-sidedness in another provision of the arbitration agreement. *Id.* Thus, *Wisconsin Auto Title* is not the Wisconsin parallel of *Discover Bank*, and Wisconsin law does not "hew…[so] closely to the California *Discover Bank* rule" (Defs.' Response at 8) as the Defendants would like the Court to believe for purposes of an analysis of this case under *Concepcion*. In contrast to *Discover Bank's*

10

specific rule on class-action waivers in arbitration agreements, this case, and Plaintiff's challenge to Defs.' Mot., both concern Wisconsin's generally applicable contract defense of unconscionability, which "has deep roots in both law and equity but was developed primarily in equity." *Wisconsin Auto Title*, 714 N.W.2d at 164 (*citing Disc. Fabric House*, 345 N.W.2d at 425).

Defendants' attacks on Plaintiff's arguments, especially as concerns their use of *Concepcion*, is only aimed at substantive unconscionability. Their argument on the timing of the receipt of any actual written arbitration agreement by Plaintiff is focused only on the issue of the formation, in the strictest technical sense, of an agreement to arbitrate. (*See* Defs.' Reply at 2-6 (which is a section of their "ARGUMENT" entitled "Plaintiff Agreed To Arbitrate").) Defs.' Reply does not at all assail Plaintiff's claims about the procedurally unconscionable nature of that contract, including its formation, or her analysis in Pl.'s Response of the facts of this case under governing Wisconsin law on procedural unconscionability. Accordingly, Plaintiff's original argument showing the many factors of procedural unconscionability in this matter (*see* Pl.'s Response at 17-20) stands uncontroverted. Plaintiff will now clarify the substantive unconscionability analysis of Wisconsin law, in light of *Concepcion*.

1. **Defendants' arbitration provision is unconscionable due to its one-sidedness.**

Defendants' arbitration and class action waiver provisions are substantively unconscionable. "[O]ne-sidedness of…[an] arbitration provision is sufficient to hold the arbitration provision substantively unconscionable."[6] *Wisconsin Auto Title*, 714 N.W.2d at 174.

---

[6] As the New Mexico Supreme Court recently correctly noted, given its "saving clause", even after *Concepcion*, the FAA still does not preempt generally applicable contract defenses such as unconscionability based on one-sidedness from voiding a contract or contract provision, including those involving arbitration. *See Rivera*, *2011* N.M. LEXIS 379 at *12, *32-44.

11

Defendants' arbitration provision contains such one-sidedness. Defendants' arbitration agreement allows them to collect attorneys' fees and expenses, but there is no similar entitlement to Plaintiff of other consumers.[7] (Dent Decl. Ex. 1, ¶ 16.) These are not merely collection fees if Defendants have to collect on the "Account" because of default, but apply to all those "incur[red] in order to…protect…[Defendants'] rights." (*Id.*) By its own language, this scope of this one-sided provision is quite broad. Defendants, but not Plaintiff, could get their attorneys' fees, expenses, and costs for any dispute over their rights resolved in arbitration. If a consumer, including Plaintiff, were to make a claim against Defendants for any reason, which, from Defendants' perspective, would be attacking their "rights", Defendants could compel arbitration (according to their arguments here) and get their attorneys' fees and costs associated with protecting those rights in the arbitration. However, there is no such reciprocal right for consumers or Plaintiff on the other side.

Further, even in the Arbitration section of the Credit Card Agreement there is one-sidedness concerning the costs of arbitration. According to the provision's terms, "[t]he arbitrator will decide who will ultimately be responsible for paying those fees", but consumers may actually "be required to reimburse" WFNNB "for any arbitration filing, administrative or hearing fees" up to the amount of what **both parties'** "combined court costs would have been." (Dent Decl. Ex. 1, ¶ 26 (emphasis added).) There is absolutely no corresponding language, however, stating that Defendants may be required to reimburse Plaintiff or other consumers for such fees and costs.

---

[7]     Defendants "may not avoid a finding that the arbitration provisions in its contract are unconscionable by hiding a particularly one-sided term in a different physical location within the contract [(¶ 16, rather than ¶ 26)]." (Mather Decl., Exhibit 1 (*Overdraft* September 1, 2011, Order) at 20.)

12

Finally the arbitration provision explicitly holds that the rights under it "inure to the benefit of any third party named as a co-defendant with" WFNNB or Alliance, but the same is not true for third parties on the side of consumers. (*Id.*) Further, while the benefits inure to such co-defendants of WFNNB or Alliance, the "obligations under this arbitration provision" do not inure to such parties. (*Id.*) Receiving the benefit of the rights of an agreement, without incurring the obligations created under an agreement, is yet another one-sided element of the fine print, tilted against the consumer in the corporate entity's favor.

2. **Defendants' arbitration provision is further unconscionable due to the fee assessment structure.**

Assessment of fees in a contract of adhesion, including arbitration fees, without regard for the individual consumer's ability to bear these costs, supports a conclusion of substantive unconscionability. *Wisconsin Auto Title*, 714 N.W.2d at 175. In *Wisconsin Auto Title*, the Court found the assessing of "a $125 filing fee" significant to "a conclusion of substantive unconscionability…in the context of short-term high-interest loan agreements because the borrowers are, in all likelihood, strapped for cash." *Id.* Here, the financial costs to all consumers, including Plaintiff and other vulnerable consumers to whom Defendants aggressively market Payment Protection – those who fall into the subprime credit category, or customers who have low credit limits because of impaired credit ratings – are much higher. Plaintiff must pay all costs if she makes a claim for arbitration. (Dent Decl. Ex. 1, ¶ 26.) If Defendants elect to arbitrate, then they will merely "advance" the consumer's costs, and they will only do so upon written request to WFNNB's General Counsel. (*Id.*) Ultimately, however, "[t]he arbitrator will decide who will…be responsible for paying those fees", and Plaintiff and other consumers may actually "be required to reimburse" WFNNB "for any arbitration filing, administrative or hearing

13

fees" up to the amount of what **both parties'** "combined court costs would have been." (*Id.* (emphasis added).) Additionally, a consumer must bear the costs of appealing an arbitrator's decision "regardless of the outcome." (*Id.*) Of course, all of these fees and costs are in addition to the expenses Plaintiff must bear that are necessary for her own attorneys, experts and witnesses. This is a critical barrier to entry. *See In re Am. Express Merch. Litig.*, 554 F.3d 300, 316 (2d Cir. 2009).

### 3. Other elements of Defendants' arbitration provision support a finding of unconscionability under generally applicable Wisconsin law.

The Wisconsin Supreme Court has consistently expressed this state's strong governmental interest in disallowing parties, especially those of vastly superior bargaining power, from writing into contracts—particularly contracts of adhesion—clauses that would insulate or exculpate the drafting party from liability. *See Atkins v. Swimwest Family Fitness Ctr.*, 691 N.W.2d 334, 338-41 (Wis. 2005) (collecting cases); *see also Merten v. Nathan*, 321 N.W.2d 173, 178 (Wis. 1982) (It is the broad concept of Wisconsin public policy, which "embodies the community common good and common conscience", that forms the "principle of law" limiting contractual freedoms in the manner discussed above and in *Atkins*.). This is a principle of Wisconsin law relevant to all contracts, and not specific to arbitration agreements. *Id.* Accordingly, Defendants' mandatory arbitration provision, with its mandatory class-action waiver, is unconscionable and unenforceable under Wisconsin public policy, just like any other explicit or *de facto* exculpatory contract provision.

The arguments made in Pl.'s Response prior to *Concepcion* show the effective one-sidedness of Defendants' arbitration provision with class-action waiver. As discussed above, however, there is nothing in *Concepcion* that holds that the FAA preempts Wisconsin's general

14

unconscionability law on one-sidedness. This blatantly one-sided effect of class-action waiver is but one element of the one-sidedness analysis. Insulating oneself from liability in the fashion of an exculpatory clause is simply another longstanding contract defense under Wisconsin law, which is generally applicable to all contracts and contract provisions. *See Atkins*, 691 N.W.2d at 338-41 (collecting cases); *Merten v. Nathan*, 321 N.W.2d at 178. It neither applies only to arbitration, nor derives its meaning from the fact that it is an arbitration agreement at issue.

Further, the fact that one of the arbitration forums selected by Defendants is the National Arbitration Forum ("NAF")[8] is an additional significant factor favoring a finding of unconscionability and underscoring the problems with the use of unconscionable arbitration to which the Plaintiff has not consented. The exposure of serious defects in consumer arbitration by this forum prevents the Court from being assured that such firms provide "an effective and accessible alternative forum." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 606 (3d Cir. 2002) (quoting *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234-35 (10th Cir. 1999)). Notably, the NAF agreed in a 2009 consent decree to cease all consumer arbitrations after abuses came to light calling its neutrality into doubt.[9] As the Minnesota Attorney General observed, "[t]he fundamental problem with consumer arbitrations under 'fine print' contracts is that the arbitration company draws its income from the dominant participant—namely the credit card company . . . –and personnel have a financial incentive to make sure that the corporation is pleased with the outcome."[10] The reality of the cozy relationship between arbitration firms and repeat players like WFNNB only magnifies the exculpatory, anti-consumer effect of Defendants' already substantively unconscionable arbitration clause.

---

[8]     *See* Dent Decl. Ex. 1, ¶ 26.
[9]     *See* http://www.publicjustice.net/Repository/Files/NAFMinn_Letter_071909.pdf.
[10]    *See Id.*

15

## III. DEFENDANTS HAVE NOT EVEN ESTABLISHED THAT A VALID ARBITRATION AGREEMENT APPLICABLE TO PLAINTIFF'S CLAIMS EXISTS.

Defendants have failed to meet their burden of showing that Plaintiff has agreed to resolve her claims relating to the Credit Card Account and the Payment Protection plan through binding arbitration. The principle that the existence of a valid and enforceable arbitration agreement is a prerequisite to compelling a party to arbitrate has been expressly confirmed by *Concepcion*:

> The principal purpose of the FAA is to ensure that private arbitration agreements are enforced **according to their terms**….This purpose is readily apparent from the FAA's text. Section 2 makes arbitration agreements "valid, irrevocable, and enforceable" **as written** (subject, of course, to the saving clause); § 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims "**in accordance with the terms of the agreement**"; and § 4 requires courts to compel arbitration "**in accordance with the terms of the agreement**" . . . (**assuming that the "making of the arbitration agreement . . . is not at issue**).

131 S. Ct. at 1748 (internal citations and some internal quotations omitted) (emphasis added). Accordingly, the law on this matter cited in Pl.'s Response (at 4-6) remains valid and applicable after *Concepcion*.

Defendants have failed to prove that a valid and enforceable arbitration agreement exists concerning Payment Protection.[11] In addition to the reasons already given (*see* Pl.'s Response at 4-7), and even more significantly, the Credit Card Agreement propounded by Defendants

---

[11] Defendants' assertion that Plaintiff cannot challenge the existence of the arbitration provision because it is within the Credit Card Agreement that she bases her breach of contract claims on (*see* Defs.' Response at 3) is not supported by relevant legal authority. Plaintiff's breach of contract claim is an alternative theory of liability, and does not prohibit her from alternatively arguing that no valid contract, and hence arbitration provision, exists. *See Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1017 (W.D. Wis. 2008) (*citing* Fed. R. Civ. P. 8(e)(2) and *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003).) Further, notwithstanding Defendants' choice of phrasing about what Plaintiff supposedly does *not* dispute (*see* Defs.' Response at 3), Plaintiff nowhere admits that she entered into, or even saw, the specific agreement, including the arbitration agreement, submitted here by Defendants. More importantly, Plaintiff does not admit, and strongly disputes, that she saw, or entered into, any agreement to arbitrate claims regarding her Payment Protection product, In fact, Defendants have not even produced such a purported agreement.

16

specifically references the separate, optional Payment Protection product that Plaintiff is challenging ("Account Assure"). (Dent Decl. Ex. 1, ¶ 22.)

As the Credit Card Agreement explicitly states, "[t]he terms and conditions governing Account Assure will be provided upon enrollment." (*Id.*) It follows then, that the Credit Card Agreement (Dent Decl. Ex. 1), with its arbitration provision, is not the governing contractual terms and conditions for Plaintiff's Payment Protection product, as those would come later "upon enrollment." However, Defendants have not produced the Payment Protection Agreement that would arguably govern the relationship between Plaintiff and Defendants concerning Defendants' Payment Protection plan, which is the separate, optional product that is the subject of this action.[12] In fact, Defendants do not even refer to this document in either of their briefs. Thus, Defendants do not produce any evidence of a document purporting to relate the Payment Protection product, with its separate terms and conditions, back to the original Credit Card Agreement and its arbitration provision, let alone an actual arbitration provision governing the Payment Protection terms and conditions.[13] Accordingly, Defendants in no way carry their burden that Plaintiff's Payment Protection claims are subject to a valid arbitration agreement. At the very least, Plaintiff must be entitled to discovery on this, especially given the paucity of evidence even presented by Defendants.

---

[12]    Plaintiff's claims all concern an "optional" (*see* Dent Decl. Ex., ¶ 22), though heavily promoted and targeted, product, i.e., Payment Protection, which is entirely separate from the credit product and the credit card agreement, and is subject to a separate and new agreement. Plaintiff's claims about the separate, optional Payment Protection product, has nothing to do with her credit card account, or how Defendants conduct their credit card business. In contrast, *Concepcion* involved a claim against AT&T regarding the service and/or product sold to the consumer pursuant to the agreement directly containing the arbitration provision. Unlike in *Concepcion*, this case involves a separate sales contract at a later date, for another product (Payment Protection) offered by Defendants.

[13]    For the reasons discussed in this paragraph, in addition to failing to show that valid arbitration agreement between Plaintiff and Defendants exists, Defendants claim that Plaintiff's Payment Protection claims are within the scope of the Credit Card Agreement arbitration clause summarily fails. The Payment Protection products are governed by the "terms and conditions governing Account Assure", as Defendants call it. (*See* Dent Decl. Ex. 1, ¶ 22.)

Based on the foregoing, Defendants have come nowhere near carrying their burden to establish that valid agreement to arbitrate exists between the parties, especially concerning the "optional" product of Payment Protection, which is the only product that Plaintiff has challenged in this lawsuit. Nevertheless, there is further contractual language in the Credit Card Agreement produced by Defendants that undermines their claims that the arbitration provision in that agreement covers Plaintiff's claims here about Payment Protection. The arbitration provision opens with its purported scope of coverage. (Dent Decl. Ex. 1, ¶ 26.) Nowhere in this does it even come close to incorporating or referring to the separate "Account Assure" (Payment Protection) product that a customer may at some point later purchase, even though it was discussed just four short paragraphs earlier in the agreement. (*Cf.* Dent Decl. Ex. 1, ¶ 22, *with* Dent Decl. Ex. 1, ¶ 26.) The Credit Card Agreement does tell the customer, however, that "[w]hether or not you purchase Account Assure will not affect your…terms of…[your] credit agreement." (Dent Decl. Ex. 1, ¶ 22.) Thus, it will neither expand nor restrict the terms of the Credit Card Agreement, including the application of its arbitration provision. This would lead any consumer to believe that the two agreements are entirely separate, and that the arbitration provision in the Credit Card Agreement would apply, if appropriate, to that agreement, and the "terms and conditions governing Account Assure" would be the separate agreement covering Payment Protection.

Finally, in addition to the fatal evidentiary deficiencies already discussed, by its own terms in its opening paragraph (before the enumerated ¶ clauses begin) the Plaintiff's purported "Agreement with World Financial Network National Bank" states that it "covers the *use* of…[the consumer's] credit card account with" Defendants. (Dent Decl. Ex. 1 (emphasis added).)

18

Plaintiff's claims here, however, do not involve the credit card account at all, and certainly do not involve her "use" of the account. However, an arbitration provision in a contract only applies to "a controversy thereafter arising out of such contract." 9 U.S.C. § 2. The Credit Card Agreement makes it explicitly clear that the controversy here arises out of the Payment Protection agreement ("terms and conditions governing Account Assure"), which Defendants have not produced, or even made reference to. Notwithstanding this, the very beginning of the Credit Card Agreement itself defines controversies that can arise out of that contract, namely, those concerning the "use of…[the consumer's] credit card account with" Defendants. (Dent Decl. Ex. 1.)

Defendants have not even attempted to claim that Plaintiff was presented with an arbitration provision in the "terms and conditions governing" her Payment Protection product. Nor have they even attempted to claim that these terms and conditions contain some reference to the arbitration provision in the Credit Card Agreement. The Payment Protection Agreement has neither been produced nor referred to in Defendants' briefing, though their Credit Card Agreement explicitly refers to it.

Further, Plaintiff continues to maintain her arguments that Defendants have not established the existence of a valid agreement to arbitrate already addressed in her primary brief. This includes her specific challenges to Defendants' supposed evidentiary basis for their claim that a valid agreement to arbitrate exists at Pl.'s Response at 6-7 n.2. However, even based on the foregoing, and notwithstanding Plaintiff's entitlement to challenge Defendants supposed evidentiary submissions, Defendants cannot prove that a contractually valid "meeting of the

19

minds" occurred. Therefore, no valid arbitration agreement exists between the parties and Defs.'

Mot. should be denied.

## IV. IN THE EVENT THE COURT DETERMINES THAT OUTRIGHT DENIAL OF DEFS.' MOT. IS NOT THE PROPER COURSE OF ACTION AT THIS JUNCTURE, PLAINTIFF IS ENTITLED TO ARBITRATION-RELATED DISCOVERY.

Based on all of the foregoing, this Court should deny Defs.' Mot. and order this case to

proceed in this forum. However, if the Court is going to consider the possibility that a valid

arbitration agreement applicable to Plaintiff's claims may actually exist, and that arbitration

might be compelled under the agreement, notwithstanding the generally applicable contract

defenses under Wisconsin law relative to this case discussed above, then this Court should

properly apply the "summary judgment standard [of review] as set forth in Federal Rules of Civil

Procedure 56,…and…[it] must consider all of the non-moving party's evidence and construe all

reasonable inferences in the light most favorable to the non-moving party." *Tickanen v. Harris &

Harris, Ltd.*, 461 F. Supp. 2d 863, 866 (E.D. Wis. 2006) (citing *Par-Knit Mills, Inc. v.

Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir 1980); *see also Three Valleys Mun. Water

Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991). Accordingly, in following

Fed. R. Civ. P. 56, including sub-part (d) to that Rule, the Court should allow Plaintiff, the non-

moving party, the opportunity to conduct discovery on the issue of the existence of a valid, and

enforceable, agreement to arbitrate.[14]

---

[14]     Plaintiff has already challenged the evidentiary sufficiency of Defs.' Mot. under the applicable Fed. R. Civ. P. 56 standard, and this determination concerns not just the issue of unconscionability, but also the prerequisite conditions that Defendants must establish of whether a valid agreement to arbitrate even exists, and, if it does, whether the agreement encompasses the controversy here over the separate Payment Protection product. (*See* Pl.'s Response at 5 & 7 n.2.) Plaintiff maintains her request to depose Ms. Dent, as part of the necessary arbitration-related discovery, should the Court not moot this request by denying Defs.' Mot. outright based on the submissions already before it.

This is supported by Wisconsin procedural law, which suggests an evidentiary hearing in making determinations of unconscionability in circumstances such as in the present case. *See Wisconsin Auto Title*, 714 N.W.2d at 167-68 ("evidentiary hearing is ordinarily required as a basis for the necessary findings of fact" to support a ruling on unconscionability). As no discovery has occurred in this matter, Plaintiff should be allowed to conduct discovery at least related to the issues of the unconscionability of the contract and its arbitration provision, including any actual contract or arbitration agreement formation, so as to be able to have the full and fair opportunity to challenge Defendants as the parties attempt to carry their respective evidentiary burdens.

Defendants are seeking a ruling on the enforceability of arbitration without the benefit of a fully developed factual record. Given the fact-intensive nature of this inquiry, the enforceability of the provisions should not be resolved on the pleadings alone. *See Granite Rock Co. v. International Brotherhood of Teamsters*, 130 S. Ct. 2847, 2856 (2010) ("A court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute. To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce.").

Here there is no, or insufficient, evidentiary record with respect to arbitration. Beyond the deficient submissions and self-serving assertions made by Defendants, Defendants are likely in control of additional evidence that may exist. As a result, there is insufficient substantive record upon which the Court can base its unconscionability decision and, thus, no reasonable inferences to be drawn there from. Although the Court may take judicial notice of certain facts, judicial

notice is limited to those facts "generally known within the territorial jurisdiction" of the court or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201. Issues of waiver, contract formation and unilateral change in terms by Defendants lie at the very heart of the issue of arbitrability, and discovery of such matters is routinely granted. *See, e.g., Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000); and *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608-10 (3d Cir. 2002).

Moreover, decisions subsequent to *Concepcion* confirm the necessity of developing an evidentiary record prior to ruling on a motion to compel arbitration. *See, e.g., Gore v. Alltel Communs., LLC ("Gore II")*, No. 10-735-DRH, 2011 U.S. Dist. LEXIS 48163, at *10-11 (S.D. Ill May 5, 2011);[15] *In re Checking Account Overdraft Litigation*, case no. 09-MD-02036-JLK (S.D. Fla. June 3, 2011);[16] *Hamby v. Power Toyota Irvine*, Case No. 11cv544-BTM (BGS), 2011 U.S. Dist. LEXIS 77582 (S.D. Cal. July 18, 2011). Consistent with the *Blair, Gore, Overdraft Litigation,* and *Hamby* decisions, here plaintiff is entitled to seek discovery on the very issues which could render the arbitration agreement unenforceable. The discovery Plaintiff seeks will be narrowly tailored to adduce evidence of unconscionability, arbitration agreement formation, and arbitration scope.

---

[15]    *Gore* is a decision handed down by the District Court post-*Concepcion* in which, after reconsideration following *Concepcion*, it explicitly upheld its pre-*Concepcion* ruling (*Gore v. Alltel Communs., LLC ("Gore I")*, No. 10-735-DRH, 2011 U.S. Dist. LEXIS 35798, at *10-11, *14-16 (S.D. Ill Apr. 1, 2011) ) allowing arbitration-related discovery prior to ruling on a motion to compel arbitration. In the pre-*Concepcion* decision in *Gore* upheld in the subsequent post-*Concepcion* decision, "the Court order[ed]…that discovery be conducted in order for the Court to make an informed decision as to whether the parties have formed a valid arbitration agreement, and if so, when", and [i]f an arbitration agreement has been agreed to, then we must decide whether it applies to the claims in this case." *Gore I*, 2011 U.S. Dist. LEXIS 35798, at *14-16 (*citing Granite Rock Co.*, 130 S. Ct. at 2857-58). Similar to this case, *Gore* involved two separate contracts claimed to govern the controversy at issue. *Id.*

[16]    A copy of this June 3, 2011, Order in *Overdraft* is attached as Mather Decl., Exhibit 3.

22

## V.    IF ARBITRATION IS ORDERED, THIS COURT SHOULD BIFURCATE AND GRANT PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF.

Plaintiff has not "dressed up a damages claim as one for injunctive relief", as Defendants falsely assert. (Defs.' Reply at 10.) While Defendants cite to one passage in the Complaint referencing Plaintiff's seeking a declaratory judgment, they intentionally avoid acknowledgement of Plaintiff's repeated claims for injunctive relief enjoining Defendants' wrongful conduct, and stressing the importance of obtaining this equitable relief beyond any monetary claims. (*See* Complaint at ¶¶ 65, 67h, 71 ("Plaintiff's primary goal in bringing this action is to obtain injunctive relief and stop Defendants from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme described in this Complaint."), 72 ("Injunctive relief is necessary to prevent further fraudulent and unfair business practices by Defendants.  Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendants from continuing to commit its deceptive, fraudulent and unfair policies."), 104c, 105 (Plaintiff seeks injunctive relief enjoining Defendants from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme described in this Complaint.").) "Accordingly, the Court…[should] not presume Plaintiff seeks injunctive relief in bad faith, or simply to avoid arbitration." (Mather Decl., Exhibit 1 (*Overdraft* September 1, 2011, Order) at 23.)

Further, Defendants' claim that it is inappropriate to rely on "pre-*Concepcion*" cases such as *Tim Torres Enter., Inc. v. Linscott*, 416 N.W.2d 670, 676 (Wis. Ct. App. 1987) and *Broughton v. Cigna Health Plans of California*, 988 P.2d 67, 78 (Cal. 1999))[17] to find injunctive relief claims not arbitrable on an individual basis is incorrect. *See DirecTV*, 2011 U.S. Dist. LEXIS

---

[17]         *See also Cruz v. PacifiCare Health Systems, Inc.*, 66 P.3d 1157, 1167-68 (Cal. 2003).

23

102027 at *35-39. In conducting a thorough analysis of the matter, the court in *DirectTV* noted that both "*Cruz* and *Broughton* are more nuanced in their holdings than an 'outright' prohibition of certain claims."[18] *Id.* at *37. The holding in these cases is that when, as Plaintiff is here, "a plaintiff is functioning as a private attorney general, the injunctive claim is not arbitrable. Thus,…[these cases] acknowledge that certain injunctive claims may be arbitrable and instead provide guidelines for determining when injunctive claims are not subject to arbitration." *Id.* at *37-38.

Accordingly, the compelling reasons set forth in *Broughton* "why arbitration is not the proper forum for vindicating a broad public right" remain viable. *Id. See also Tim Torres*, 416 N.W.2d at 676 (Injunctive relief under the WDTPA furthers the statutes "general purpose of…*prevent*[*ing*] certain activities deemed harmful to *citizens'* economic and social well-being…[and t]he broad remedial scope of sec. 100.18 and *its protective purpose* make it similar to the remedial provisions of the federal antitrust laws.") (emphasis added). These compelling reasons include:

- (1) the purpose of arbitration remains the voluntary resolution of private disputes in an expeditious and efficient manner;
- (2) there are "evident institutional shortcomings of private arbitration in the field of such public injunctions", including:
  - (a) a District Court's retention of jurisdiction over a public injunction while arbitrators are not bound by earlier decisions of arbitrators in the same case – leading to inconsistency;
  - (b) "arbitration awards don't automatically have effect on non-parties, so even a public injunction could be enforceable only by the parties to the original case"; and

---

[18]     This is in contrast to *Zarandi*, which has no discussion whatsoever on whether the holdings of *Cruz* and *Broughton* are the type of "outright" state law prohibitions overruled by *Concepcion's* proclamation that "[w]hen state law prohibits **outright** the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *DirectV*, 2011 U.S. Dist. LEXIS 102027 at *36-37 (*quoting Concepcion*, 131 S. Ct. at 1747) (emphasis added). *Zarandi* simply decides that *Concepcion* "clearly does" overrule the holdings of *Cruz* and *Broughton*, with no discussion. *DirectV*, 2011 U.S. Dist. LEXIS 102027 at *36-37.

- (c) "if another consumer plaintiff sought to enforce an injunction, he or she would need to re-arbitrate the same claim"; and
  - (3) "judges are accountable to the public in ways that arbitrators are not" and thus, "judges are more suitable for overseeing injunctive remedies designed for public protection."

*DirecTV*, 2011 U.S. Dist. LEXIS 102027 at *38-39.

As in *DirecTV*, Plaintiff here brings her WDTPA "claims as [a] private attorney…general, seeking to vindicate a public right. These claims are not intended to remedy a primarily private right or rights merely incidental to the public benefit." *Id.* at *39. The holdings of cases such as "*Cruz* and *Broughton* are not inconsistent with *Concepcion*, and they protect important public rights and remedies." *Id.* The same is true for the application of *Tim Torres* regarding the protection of "important public rights and remedies" under Wisconsin law. Accordingly, the Court should deny Defendants' attempts to compel arbitration regarding the WDTPA injunctive relief claims. *Id.*

## VI.    **CONCLUSION**

For the foregoing reasons, as well as those contained in Pl.'s Response, Plaintiff respectfully requests that this Court deny Defendants Alliance Data and WFNNB's Motion to Compel Arbitration and Stay All Proceedings in its entirety. In the alternative, Plaintiff requests that the Court defer ruling on Defendants' motion, to allow limited, arbitration-related discovery to occur. In further alternative, Plaintiff requests the court bifurcate the matter to hear Plaintiff's WDTPA claims for injunctive relief.

Respectfully submitted,

Dated:  September 14, 2011

**ADEMI & O'REILLY, LLP**

/S/ COREY MATHER
Guri Ademi (SBN: 1021729)
Shpetim Ademi (SBN: 1026973)
David J. Syrios (SBN: 1045779)
Corey Mather (SBN: 1046210)
3620 E. Layton Avenue
Cudahy, WI  53110
Telephone: (414) 482-8000
Facsimile: (414) 482-8001
gademi@ademilaw.com
sademi@ademilaw.com
dsyrios@ademilaw.com
cmather@ademilaw.com


Ruben Honik
Richard M. Golomb
Kenneth J. Grunfeld
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Telephone: (215) 985-9177

*Counsel for Plaintiff and Proposed Class*

26